**Eugene GRAVES and Marlene Graves**

v.

**REPUBLIC INSURANCE COMPANY**

v.

**PENNAMCO INSURANCE.**

**Civ. A. No. 79–652.**

United States District Court,
E. D. Pennsylvania.

May 28, 1981.

---

Howard M. Girsh, Richard Hopkins, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

SHAPIRO, District Judge.

Plaintiffs' move for summary judgment against defendant insurance company, the issuer of a policy insuring plaintiffs' home against loss caused by fire. Plaintiffs had procured other insurance prior to the fire and the issue is whether this policy covered in whole or in part a fire loss suffered by plaintiffs. Plaintiffs' motion for summary judgment will be granted; the action by the original defendant against third party defendant Pennamco remains to be tried.

Plaintiffs, Eugene and Marlene Graves, are the owners of a personal residence located at 76 Gaffney Lane, Willingboro, New Jersey. On February 21, 1978 a fire occurred at the Graves' residence which caused damage in the amount of $31,050. Plaintiffs, alleging that at the time of the fire Republic Insurance Company ("Republic") provided fire insurance coverage in the amount of $43,000, instituted this action against defendant Republic to recover the amount of their loss.

Republic answered that the Graves had cancelled their policy with Republic prior to the fire. Republic joined Allstate Insurance Company ("Allstate") and Pennamco Insurance ("Pennamco") as third-party defendants. Allstate was joined on the ground that as plaintiffs' insurer at the time of the fire it was solely liable to the Graves. Pennamco was joined on the ground that it failed to notify Republic prior to the loss that the Graves desired to cancel the Republic insurance policy.

For the purpose of plaintiffs' summary judgment motion the court accepts the facts as stated by Republic. The Republic policy was originally issued to LeRoy and Barbara King, the prior owners of the insured premises. The Graves purchased their home from the Kings and obtained an assignment of the mortgage through Pen-

Saul Doner, Philadelphia, Pa., for plaintiffs.

namco, a mortgage servicing company. Republic on request of Pennamco issued an endorsement changing the named insured from King to Graves. Thereafter, part of the Graves' monthly mortgage payment paid for the Republic insurance, but the Graves also purchased a homeowner's policy from Allstate which covered loss by fire in the amount of $45,000.

The Graves, upon discovering that they had two policies of insurance on their house, requested Pennamco to cancel the Republic policy and substitute the Allstate policy.[1] However, it is undisputed that Republic was never asked by anyone to cancel its policy. Republic has not refunded the premium paid by the Graves in whole or in part; thus, premiums on both the Republic and Allstate policies were fully paid by the Graves at the time of the fire. Allstate, upon demand of the Graves, agreed to pay one-half the damages caused by the fire ($15,525), but took the position that under its policy, both policies being in effect, the other half was due plaintiffs from Republic. Allstate's motion for summary judgment, unopposed by any party, was granted by order of July 24, 1980.

New Jersey law governs interpretation of the insurance agreement involved. As our jurisdiction is based upon diversity of citizenship, we are required to apply the choice of law rules of the forum state, Pennsylvania. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed.2d 1477 (1941); *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560 (3d Cir. 1976). The Third Circuit has determined that the Pennsylvania Supreme Court would extend the flexible conflicts methodology adopted for tort actions in *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964) to contract actions. *Melville v. American Home Assurance Co.,* 584 F.2d 1306 (3d Cir. 1978) (insurance contract); *see, Jewelcor Inc. v. St. Paul Fire & Marine Insurance Co.*, 499 F.Supp. 39 (M.D.Pa.1980) (applying *Griffith* conflicts analysis to interpretation of insur-

ance contract). This conflicts analysis "takes into account both the grouping of contacts with the various concerned jurisdictions and the interests and policies that may be validly asserted by each jurisdiction." *Melville v. American Home Assurance Co.*, 584 F.2d at 1311.

■ Under such an analysis, New Jersey law applies since all significant contacts are with that state. Plaintiffs are residents of New Jersey, the insured property is located in New Jersey and the fire giving rise to the cause of action occurred there. Both insurance companies were licensed to do business in New Jersey. New Jersey has an interest in prescribing the standards that will govern insurance contracts purchased by its residents. *See, Melville, supra* at 1313–14 (state has an interest in having its rules applied to insurance contracts purchased by its residents). No jurisdiction other than New Jersey has any state policy to vindicate on these facts.

■ Even under the former Pennsylvania conflicts rule which would interpret every contract under the law of the place of contracting, New Jersey law would apply. The place of contracting in the case of an insurance policy is the place of contract delivery. In the absence of proof as to where the policy was delivered, it is presumed that delivery took place at the insured's residence in New Jersey. *Jamison v. Miracle Mile Rambler, Inc.*, 536 F.2d 560 (3d Cir. 1976); *Crawford v. Manhattan Life Insurance Co.*, 208 Pa.Super. 150, 221 A.2d 877 (1966); *Eastcoast Equipment Co. v. Maryland Casualty Co.*, 207 Pa.Super. 383, 218 A.2d 91 (1966).

Defendant Republic argues that the Graves cancelled their policy with Republic when they orally requested Pennamco to do so. The policy provided that:

This policy shall be canceled at any time at the request of the insured, in which case this Company shall, upon sur-

---

1. The Graves have so testified at deposition. See portions of Graves' depositions attached to Republic's reply to plaintiffs' motion for summary judgment. Relying on the contradictory testimony of Ronald D. Evans, a Pennamco employee, Pennamco denies that the Graves made such a request.

render of this policy, refund the excess of paid premium above the customary short rates for the expired time. This policy may be canceled at any time by this Company by giving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand. (Paper Filed No. 42).

■ It is undisputed that no written notice of policy cancellation was sent to anyone by anyone, that the Republic premium was fully paid at the time of the fire, and that no refund of the premium paid has ever been offered or returned by Republic. To hold that an oral request to a third party, not communicated to or acted upon by Republic prior to the insured event, effects a cancellation of the policy *nunc pro tunc* would be manifestly unjust, especially since under New Jersey law the Graves as mortgagors could not cancel the fire policy on their home without the consent of the mortgagee. *See, Schellhorn Bros. Real Estate Agency v. National Liberty Insurance Co.*, 11 N.J.Misc. 849, 168 A. 278 (Supreme Court, N.J.1933); 17 Couch on Insurance 2d 67:122 (1967). Moreover, Republic has stipulated that "the original policy issued by Republic Insurance Company was in full force at the date of this fire loss." (Paper Filed No. 42).

But Republic also asserts that when the Graves obtained the Allstate insurance on their home, the policy was automatically cancelled by operation of law. It argues that under the doctrine of cancellation by substitution and replacement, procuring a second policy covering the same risk as an existing policy with an intent to cancel the existing policy, *ipso facto* cancels the prior policy. *See*, Annot., 3 A.L.R.3d 1072 (1965).[2] However, "recent decisions completely reject the view that the mere taking out of new insurance on property already insured in and of itself acts as a cancella-

tion of the prior policy." Annot., 3 A.L.R.3d 1072, 1074. Courts which have recently reviewed the so-called doctrine of cancellation by substitution have often noted that it is now disfavored and have declined to apply it. *Lee v. Ohio Casualty Insurance Co.*, 58 Ill.App.3d 1, 5, 15 Ill.Dec. 555, 558, 373 N.E.2d 1027, 1030 (1978).

■ No governing New Jersey case has been cited by counsel or found by the court. But we conclude that New Jersey would follow the modern majority view that the mere procuring of a second policy on the same risk even with the intent to have only one policy of insurance does not effect a cancellation of the first policy. *See, e. g., Insurance Co. of Pennsylvania v. Smith*, 435 F.2d 1029 (10th Cir. 1971); *National Investors Fire & Casualty Insurance Co. v. Pacific Indemnity Co.*, 359 F.2d 203 (10th Cir. 1966); *Northwestern Mutual Insurance Co. v. Michaelson*, 322 F.2d 304 (9th Cir. 1963); *Bumb v. American Home Assurance Co.*, 246 F.Supp. 509 (S.D.Cal.1965); *Continental Casualty Co. v. Aetna Insurance Co.*, 82 Ill.App.3d 402, 37 Ill.Dec. 754, 402 N.E.2d 756 (1980); *Lee v. Ohio Casualty Insurance Co., supra; Tyner v. Cherokee Insurance Co.*, 262 S.C. 462, 205 S.E.2d 380 (1974); *New Hampshire Insurance Co. v. Cruise Shops, Inc.*, 67 Misc.2d 60, 323 N.Y.S.2d 352 (1971); *Northern Insurance Co. v. Mabry*, 4 Ariz.App. 217, 419 P.2d 347 (1966); *MFA Mutual Insurance Co. v. Southwest Baptist College, Inc.*, 381 S.W.2d 797 (Mo.1964); *Baysdon v. Nationwide Mutual Fire Insurance Co.*, 259 N.C. 181, 130 S.E.2d 311 (1963); *Glens Falls Insurance Co. v. Founders Insurance Co.*, 209 Cal.App.2d 157, 25 Cal.Rptr. 753 (1962).

Plaintiffs, of course, cannot recover more than the amount of their actual loss. Their policy with Republic provides that the company is not liable for a greater proportion of the loss than the face amount of the policy bears to the entire amount of insurance covering the property against the peril involved. But no reason appears why plaintiffs, having obtained and paid for two fire

---

**2.** Obtaining New Property Insurance. As Cancellation of Existing Insurance.

insurance policies, the coverage of each of which is in excess of the amount of the loss, should not recover at least the amount of their loss. One-half of the amount of the damages having been paid by Allstate under the pro rata liability clause of its policy insuring the Graves, summary judgment will be entered for plaintiffs and against defendant Republic for the other one-half of the fire loss, the amount of $15,525.

No motion for summary judgment has been filed on behalf of Pennamco, nor could summary judgment be granted on this record; Pennamco's rights under the mortgage agreement, its role in connection with the Republic insurance policy and the information Pennamco received from the Graves all remain in dispute. Therefore, the action of Republic against Pennamco will proceed in accordance with the Order that follows.